**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2013, 6:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JANICE MANDLA MATTINGLY**
**RACHAEL C. EHLICH**
Janice Mandla Mattingly & Associates
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**RYAN H. CASSMAN**
**CATHY M. BROWNSON**
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MARRIAGE OF:   )
            )
WILLIAM SCOTT WILSON   )
            )
 Appellant-Petitioner,    )
            )
   vs.        )  No. 29A04-1208-DR-435
            )
ANDREA (WILSON) GUNNING,  )
            )
 Appellee-Respondent.    )
            )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1009-DR-1172

**July 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

William Scott Wilson (Husband) appeals from the trial court's order dissolving his marriage to Andrea R. Wilson Gunning (Wife) and determining various issues including division of property, attorney fees, child support, and custody. The issues presented in this appeal are as follows:

1. Did the trial court err by allowing Wife to relocate with the minor child?

2. Did the trial court err in its child support calculation?

3. Did the trial court erroneously divide the marital estate?

4. Did the trial court err by ordering Husband to pay a portion of Wife's attorney fees?

5. Did the trial court abuse its discretion by failing to find Wife in contempt for non-payment of the mortgage on the marital residence?

We affirm.

Husband and Wife were married on February 26, 2000 and one child (Child) was born of the marriage on February 22, 2006. Husband and Wife separated in July of 2010 and Husband's petition for dissolution of marriage was filed on September 7, 2010. After hearing the evidence on various issues raised by the parties, the trial court entered its decree of dissolution on August 1, 2012. Although the decree is very thorough and detailed, we will set forth only the provisions that are pertinent to this appeal. The trial court awarded primary physical custody of Child to Wife, with Husband and Husband's extended family permitted extensive parenting time and visitation. Child was granted permission to relocate with Wife to Wife's new residence. The trial court granted joint legal custody of Child to Husband and Wife.

2

With regard to child support, the trial court awarded credit to Husband for 140 overnights per year on the child support obligation sheet for the parenting time he exercised pursuant to the preliminary order and additional time beyond that which was required by the preliminary order. The trial court imputed to Husband weekly income in the amount of $1,405.95, which was derived from his part-time employment with Kelley Services, his employment with Westfield Washington School Corporation, and his farm income. Although Wife expressed a desire to switch from full-time to part-time employment, the trial court imputed to Wife her current earnings of $807.69 per week. The trial court ordered Husband to pay child support to Wife in the amount of $72.00 per week by means of an income withholding order, and made provisions for a credit attributable to Husband's payment of health insurance premiums. The trial court's order also provided for the payment of Husband's child support arrearage and payment to reimburse Wife for the uninsured medical expenses she incurred during the pendency of the dissolution action. Husband was found to be in contempt for his non-payment of child support, and was ordered to pay $3000.00 of Wife's attorney fees.

With respect to division of the marital estate, the trial court awarded Husband sole ownership of the marital residence. The mortgage on the residence had been foreclosed on and the mortgagor had begun the process of requesting a sheriff's sale of the property. Wife did not request that Husband pay Wife for any equity lost due to Husband's failure to pay child support to Wife, thus resulting in her delinquency on mortgage payments, or for Husband's failure to pay the mortgage on the marital residence. The trial court

acknowledged Wife's failure to pay any mortgage payment, a term that had been ordered by the trial court. The trial court further provided that Husband should receive thirty percent of the present value of Wife's remainder interest in some farmland in Tipton County that she received from her grandfather's trust when he passed away. That amount was made payable upon Wife gaining a possessory interest in the farmland. Husband now appeals. Additional facts will be supplied as needed.

Although neither party to this dissolution proceeding requested them, the trial court made special findings of fact and conclusions thereon. When that is the case, we treat the trial court's findings as *sua sponte* findings of fact. *Estudillo v. Estudillo*, 956 N.E.2d 1084 (Ind. Ct. App. 2011). "*Sua sponte* findings control only the issues they cover, and a general judgment will control as to the issues upon which there are no findings." *Estudillo v. Estudillo*, 956 N.E.2d at 1089-90 (citing *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind. 1997)). The standard of review to be applied where a trial court has made findings of fact is two-tiered. *Id*. First, we determine whether the evidence supports the findings of fact, and then we determine if the findings of fact support the conclusions thereon. *Id*. Findings will be set aside only if we find that they are clearly erroneous, namely when the record contains no facts to support them directly or inferentially. *Id*. A finding or conclusion is clearly erroneous when we are left with the firm conviction that a mistake has been made. *Id*.

1.

Husband and Wife entered into a mediated preliminary entry on April 28, 2011, in which they agreed that Husband should have parenting time with Child pursuant to the

4

Indiana Parenting Time Guidelines with Wife having primary physical custody. In the trial court's preliminary order entered on July 6, 2011, the trial court granted Husband and Wife, by stipulation, joint legal custody of Child and, again by stipulation, Wife primary physical custody of Child, with Husband having parenting time as detailed in that order. In the dissolution decree, the trial court made the following findings pertinent to this issue:

11. Wife requests sole legal and primary physical custody and permission to relocate the minor child's residence to Brownsburg, Indiana, as reflected in Mother's Notice of Intent to Relocate filed March 8, 2012. Husband seeks joint legal and primary physical custody of the minor child if Wife relocates. If Wife does not relocate, the Father has asked for joint legal and physical custody.

12. Husband currently lives in Cicero with his girlfriend and her two children.

13. Should physical custody be awarded to Husband, Dr. Miller [the custody evaluator] recommended that the minor child have her own bedroom in Husband's residence. Further if the minor child would reside in the Husband's residence, the minor child would become one of four children in the home along with Husband's girlfriend, and this would cause one of the girlfriend's children to lose his or her bedroom and he or she would then have to share a bedroom with another sibling.

14. Wife's intended relocation is to move to the home of her boyfriend, whom she testified she intends to marry, due to the foreclosure of the marital residence and pending sheriff's sale. Should physical custody be awarded to Wife, the minor child would continue to live in a single child environment and would have her own bedroom as recommended by Dr. Miller.

15. Upon Wife's relocation, Wife intends to seek part-time employment in order to be there for the minor child before and after school.

16. Wife expressed a willingness to shoulder the responsibility of travel to ensure Parenting Time occurs should the Court award her custody and allow the minor child's relocation.

17. The Court received and considered the custody evaluation prepared by Dr. Janine Miller.

18. The Court finds and orders that it is in the best interest of the minor child of the parties that Wife be awarded primary physical custody of the minor child. Further, the Court finds and Orders that the minor child shall be allowed to relocate to Brownsburg with Wife.

. . . .

23. The Court is concerned that Wife, because of being awarded primary physical custody, may without justification restrict the Parenting Time of Husband or visitation with the extended family. The Court finds that any such attempt would be detrimental to the minor child and not in her best interest based on the findings of Dr. Miller.

24. The Court further finds and orders that it is in the best interests of the minor child that Husband and Husband's extended family be permitted extensive Parenting Time and/or Visitation. Husband and Husband's extended family shall have all Parenting Time and/or Visitation that is agreed to by the parties and Husband shall have Parenting Time at a minimum as follows:

. . . .

*Appellant's Appendix* at 38-41.

Husband contends that the trial court abused its discretion by allowing Wife to relocate with Child to a home approximately one hour away from where Husband currently resides. Husband argues this is so given Wife's "demonstrated pattern of interfering with Husband's parenting time and the child's close connection to both her father and her community." *Appellant's Brief* at 9. More specifically, he claims that the trial court failed to consider several of the statutory factors under Ind. Code Ann. § 31-17-2.2-1(b) (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013). His argument in a nutshell contests the sufficiency of the trial court's findings, claiming that the trial court did

6

not thoroughly consider the evidence pertinent to those factors. It does not appear that he is arguing that the trial court completely failed to consider the factors. Wife, on the other hand, contends that the trial court's findings support the decision to allow Wife to relocate with the Child, and that the trial court was not required to consider the statutory factors at issue, although it did so.

A provisional order is designed to maintain the status quo of the parties, is temporary in nature, and terminates when the final dissolution decree is entered or the petition for dissolution is dismissed. Ind. Code Ann. § 31-15-4-14 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013); *Mosley v. Mosley*, 906 N.E.2d 928 (Ind. Ct. App. 2009). A trial court's determination of temporary orders in a dissolution action is reviewed for an abuse of discretion. *Mosley v. Mosley*, 906 N.E.2d 928. I.C. § 31-17-2.2-2 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013), provides that if a party gives notice of relocation at an initial hearing to determine custody, the trial court *may* consider the relocation statutory factors.

In the present case, the parties entered into a mediated preliminary entry, which the trial court accepted and incorporated in its preliminary order, which provided for additional parenting time for Husband. That order remained in effect until the entry of the decree of dissolution. The parties were able to present evidence on the issue of custody of Child and the impact that Child's relocation with Wife would have on Husband's parenting time and interaction with Child. The trial court did consider the factors included in the relocation statute. Husband's argument is a request for this court to reweigh the evidence to reach the

outcome he would have preferred. His citation to evidence in the record which would tend to discount the trial court's conclusion is unhelpful to our resolution here, because the record contains evidence which supports the trial court's findings and order. We decline to reweigh the evidence and conclude that Husband has failed to meet his burden of establishing that the trial court abused its discretion.

2.

Husband argues that the trial court erred in its child support calculations, contending that the amount imputed to him for his farming income is too high and is not supported by the evidence, while the amount of Wife's imputed income was too low and not supported by the evidence. Wife initially contends that Husband has waived this issue for appellate review, and in the alternative, argues that the trial court did not abuse its discretion in making the child support calculation.

Wife correctly observes that Husband has failed to provide us with a standard of review for this issue. Ind. Appellate Rule 46(A)(8)(b) provides that an argument section of an appellant's brief shall contain contentions supported by cogent reasoning, and that each contention must be supported by citations to the authorities, statutes, and relevant portions of the record. The argument must also include for each issue a concise statement of the applicable standard of review. *Id*. We agree that Husband's appellate argument on this issue is neither supported by citations to authorities or statutes, and fails to set out the appropriate standard of review.[1] Husband's argument arguably is waived, but we will consider the merits

---

[1] Husband's reply brief, however, provides the applicable standard of review and citation to authority.

nonetheless. *See Estate of Dyer v. Doyle*, 870 N.E.2d 573, 581 (Ind. Ct. App. 2007) (noting waiver of review of the issue where the appellant fails to comply with the rule, but the issue was considered on the merits, acknowledging that the defect was remedied in the reply brief).

Waiver notwithstanding, we begin our review by stating the applicable standard of review, which follows:

> Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. The trial court is vested with broad discretion in making child support determinations. A calculation of child support under the Guidelines is presumed to be valid.
>
> We will reverse a trial court's grant or denial of a request for modification of child support only where the court has abused its discretion. An abuse of discretion occurs when the trial court misinterprets the law or the decision is clearly against the logic and effect of the facts and circumstances before the court. We do not reweigh the evidence or judge the credibility of the witnesses upon review; rather, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom.

*Sandlin v. Sandlin*, 972 N.E.2d 371, 374-75 (Ind. 2012) (internal citations omitted).

Husband takes issue with the amount of income the trial court imputed to him and to Wife. The trial court made the following findings with respect to the income of the parties at issue here:

## C. CHILD SUPPORT

27. In the Court's preliminary order, issued July 5, 2011, the Court found Wife's income to be $1,057.00 per week and Husband's income to be $1,405.95 per week.

9

28. Both parties presented evidence as the parties' incomes, and the application of the incomes to the calculation of child support.

29. Since the issuance of the preliminary order, Wife lost her job and was unemployed from August 16, 2011 to January 3, 2012. Wife's income from August 19, 2011 through December 31, 2011 was Two Hundred Ninety-Dollars ($290.00) which equals the amount of her unemployment compensation. Wife's income at her new employment beginning on January 3, 2012 was $807.69 per week as reflected in her Financial Declaration. Even though Wife expressed an intent to switch to part-time employment upon her relocation to Brownsburg, the Court finds that her current earnings shall be imputed to her for purposes of calculating child support.

30. Based upon the evidence presented, the Court finds that Husband's income should be imputed in the amount of $1,405.95 as previously determined by the Court, and such income includes his part-time employment with Kelley Services, his employment with Westfield Washington School Corporation, and his farm income.

31. Husband incurs an expense of $63.00 per week to maintain health insurance for the minor child.

32. Wife has incurred $130.00 per week for work-related child care during the pendency of this case. Wife further testified that since she will be obtaining part-time employment, there will not be a need for work-related child care moving forward.

33. The evidence presented by both parties indicates that Husband enjoyed the parenting time established by the Preliminary Order from August 19, 2011 through December 31, 2012. Beginning in January 2012, Husband enjoyed the parenting time set forth in the Preliminary Order plus alternating Sunday overnights and every Wednesday overnight. Therefore, he should receive credit on the Indiana Child Support Obligation Worksheet for one hundred forty (140) overnights per year.

34. Husband is hereby ordered to pay child support to Wife in the amount of Seventy-Two Dollars and nine cents ($72.0[9]) per week by means of an Income Withholding Order for the support of the minor child, beginning on the first Friday after the entry of the Decree of Dissolution of Marriage. A copy of the Court's child support worksheet is attached hereto and marked as Exhibit A. All child support payments shall be paid directly to the Indiana State Central Collections Unit for the use and benefit of the minor child. The

attorney representing the payor shall prepare the Income Withholding Order. The child support payments shall be paid via cash, certified check or money order until the Income Withholding Order takes effect.

35. The Court in its preliminary order ordered Husband to pay Wife child support in the amount of $175.24 per week. The evidence reflects that Husband has not made any child support payments in compliance with this Court's preliminary Order, with the exception of a $40.00 payment made March 8, 2012 (approximately one week prior to the final hearing setting), and another $40.00 payment made on May 21, 2012 (made on the actual day of the final hearing). Mother previously filed a contempt citation due to such non-payment and the same was before the Court at final hearing.

36. On August 19, 2011, Wife filed a Verified Petition to Modify Preliminary Order. The Petition was filed because Wife had lost her job, and due to her unemployment, she was unable to meet her financial obligations under the Preliminary Order. She requested that Husband be ordered to pay the expenses related to the marital residence that had been her responsibility. Moreover, Wife requested a modification of the child support being paid by Husband.

37. Although hearings were held with regard to the Verified Petition to Modify Preliminary Order, evidence was not concluded, and the only modification took place from the bench on November 15, 2011 at which time Husband was ordered to pay Wife's health insurance.

38. Immediately after Wife's employment ceased, Husband began to cover the minor child on his health insurance available through his employer, Westfield Washington School Corporation.

39. The Court finds that child support should be retroactively modified due to the changes of circumstances to reflect the parties' incomes at the time of the filing of the Petition to Modify.

40. The Court finds that Husband's child support obligation from August 19, 2011 through the date of this Decree should have been and is $3,600.00 ($72.00 per week x 50 weeks).

41. The Court finds that Husband should be and is given a credit for payment of the health insurance premium in the amount of $63.00 per week since Sept. 1, 2011. Such credit through the date of the Decree is $3,087.00 ($63.00 per week X 49 weeks). Further Husband should receive credit for the two $40.00 payments.

11

42. Husband's child support arrearage as of the date of the Decree is $433.00. Husband is found in contempt for his failure to pay child support. Husband shall pay an additional $10.00 per week until such arrearage is paid in full.

43. Husband is ordered to provide medical insurance for the minor child as available through his employer.

44. Husband is ordered to reimburse Wife the sum of $359.54 for uninsured medical expenses Wife incurred due to Husband not providing Wife with an insurance card in a timely manner, which sum shall be paid within ninety (90) days of the Court's order.

45. In accordance with the Indiana Child Support Guidelines and Rules, Wife shall pay the first Eight Hundred Sixty-Four and 24/100 Dollars ($864.24) per year of the minor child's uninsured health care expenses, including medical, dental, optical, ophthalmological, orthodontic, prescriptive, and counseling expenses. Said sum represents six percent (6%) of the parties' combined annual support obligation as determined by multiplying the weekly amount on line 4 of the Child Support Obligation Worksheet by fifty-two (52) weeks and further multiplying that product by six percent (6%). All such uninsured expenses in excess of that amount per year shall be paid sixty-four percent (64%) by Husband and thirty-six percent (36%) by Wife. Any reimbursements owed by one party to the other shall be paid within seven (7) days of presentment of receipts or invoices for said expenses.

46. The parties shall proportionately divide all extra-curricular expenses relating to the minor child with sixty-four percent (64%) to be [paid] by Husband and thirty-six percent (36%) to be paid by Wife. Any reimbursements owed by one party to the other shall be paid within seven (7) days of presentment of receipts or invoices for said expenses.

. . . .

48. Pursuant to I.C. § 31-16-9-1, the child support Husband shall be liable for the payment of the Clerk's Office annual Child Support Docket Fee upon notice of or demand therefor, or on the first business day of each January of each year following the date of entry of a Decree Of Dissolution Of Marriage herein, whichever event shall first occur. The Husband shall be responsible for completing the Child Support Information Sheet and providing this completed form to the Office of the Clerk prior to the start of the Husband's child support obligation. It shall be the duty and obligation of the Husband to inform the

12

Office of the County Clerk of any change in his residence address that might, in any way, affect his timely receipt of child support checks mailed to that Office by Wife. Similarly, it shall be the obligation of the Wife to notify the Office of the County Clerk of any change in her residence address so as to facilitate the mailing of notices from the Office to Wife.

*Appellant's Appendix* at 43-48.

Our review of the record and the trial court's findings and conclusions on this issue lead us to conclude that the trial court did not abuse its discretion. Husband does not challenge the trial court's finding imputing income to him from driving a school bus, approximately $17,000.00 annually, and for his work at Kelley Services, approximately $7500.00 annually. His challenge centers on the income imputed to him from his farming business. Husband testified that his farming income fluctuated and that the appropriate amount that should be imputed to him is $22,627.00 annually. Husband argued that his income, therefore, should be calculated at $907.00 weekly, or $47,164.00 annually.

Husband testified, however, that he should be able to make at least $30,000.00 annually from farming. Further, Husband testified that he had omitted approximately $41,000.00 worth of income from his calculation and that $788.00 a week was left out of his estimated weekly income of $907.00. Wife testified based upon her familiarity with Husband's farming business that the income does fluctuate, but that farming is a "cash heavy business." *Transcript* at 294. Exhibits offered by Wife and considered by the trial court showed that for 34 weeks from January 1, 2011 to August 30, 2011, Husband's personal account weekly deposits averaged $3369.46 and that for those same 34 weeks Husband's business account averaged weekly deposits of $428.44. For 43 weeks from January 1, 2010

13

through October 21, 2010, Husband's personal checking account averaged $1532.57 and his business account averaged $1868.24 in deposits.

The trial court's calculation based upon income imputed to Husband at $1,405.95 weekly, or approximately $73,000.00 annually, is the same amount the trial court assigned to Husband after the contested preliminary hearing. Husband's sources of employment had not changed since that time. The trial court's child support calculation as it pertains to Husband's income is within the range of evidence introduced at the hearing. A trial court's child support calculation is presumptively valid. *Sandlin v. Sandlin*, 972 N.E.2d 371. To the extent it could be said that the calculation with respect to the farming income is not mathematically precise, we acknowledge that we do not expect mathematical precision, given the nature of the evidence before the trial court. *See Cox v. Cox*, 580 N.E.2d 344, 350 (Ind. Ct. App. 1991) ("[T]he court's determination was limited by the nature of the evidence before it. In such circumstances, an expectation of mathematical precision by the reviewing court would be an exercise in futility and we will not so indulge ourselves."). We find no error here.

As for the income imputed to Wife, we likewise find no error in the trial court's calculation. Wife testified that her income had decreased following a period during which she was unemployed. Wife collected unemployment benefits from August 16, 2011 through December 31, 2011. Wife testified that she was seeking to reduce her employment to part-time work, but the trial court imputed to her weekly income based upon her current earnings at her new job. The trial court's calculation of Wife's income at $807.69 per week is

14

supported by the evidence. Husband has failed to establish that the trial court's calculation is clearly erroneous.

3.

Husband contests the trial court's division of the marital property claiming that the trial court erred in its treatment of Wife's inheritance of a remainder interest in farmland from her grandfather's trust upon his death. The trial court made the following determination in its order:

F. MARITAL ESTATE

52. There was little dispute with respect to what was in the marital estate, with the exception of the issue of Wife's remainder interest in Tipton County farmland received from her grandfather's trust (Robert N. Smith Revocable Living Trust) upon his passing. Such remainder interest is owned jointly with Wife's brother and is subject to successive life estates (one deed has successive life estates in Wife's grandmother and then Wife's uncle, and the other deed has successive life estates in Wife's Mother and Wife's Aunt).

53. The evidence is clear that while Wife has a remainder interest in such real estate, but [sic] she has no present possessory interest. Wife is not actually in possession of said real estate and she has no present possessory right to occupy or use the land as she sees fit until such time as the successive life tenants pass away. Wife has no present rights to either mortgage or sell such real estate. Husband presented evidence that the value of Wife's remainder interest as of the date of the petition for dissolution was $453,308.00, as reflected by the testimony of Ryan Miller. Wife contended that the remainder interest was too remote to constitute marital property that would be subject to division.

54. The Court finds that this remainder interest was transferred and vested during the marriage and that Husband was not named as a recipient of the gift, only the Wife. Therefore, Wife's remainder interest is vested and should be included in the marital estate. Since this property was a gift, the Court must consider this fact as a significant factor in support of the deviation from the presumption of an equal division of the marital estate. The Court finds that the fair and equitable division of the value of this property should be 70% Wife

15

and 30% Husband. Wife shall not mortgage, sell or impair the title to such real estate in any way without prior notice to Husband. Wife shall immediately notify the Husband of receiving the possessory interest in such real estate and shall pay to the Husband the sum of $135,992.00 (30% of the value) within thirty (30) days of the Wife receiving such possessory interest. Wife shall hold her remainder interest in the Tipton County real estate free and clear from all claims of Husband except her remainder interest and the real estate shall be subject to the required payment by the Wife to the Husband as set forth in this Decree.

. . . .

65.    The Court finds that there is insufficient evidence to deviate from the statutory presumption that an equal division of the marital estate is fair and equitable except as previously discussed concerning the remainder interest in the Tipton County real estate.

*Appellant's Appendix* at 25-31.

Husband contends that the trial court's valuation of the farmland was erroneous because it deprives him of the benefit of potential future increases in the value of the farmland, by using a definitive cash value calculation for purposes of dividing the marital property. Wife disagrees contending that the trial court did not abuse its discretion, and suggests that the trial court could have found that the Wife's interest is too remote to be included in the property division.

In general, the marital pot closes on the day the petition for dissolution is filed. *Granzow v. Granzow*, 855 N.E.2d 680 (Ind. Ct. App. 2006). I.C. § 31-15-7-4 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013), provides in pertinent part that a trial court shall divide the property of the parties to a dissolution action whether the property was acquired by either spouse in his or her own right before or after the marriage. I.C. § 31-15-7-5 further provides in part that the trial court in a dissolution action shall

16

presume that an equal division of the parties is just and reasonable except that the presumption may be rebutted by evidence of the extent to which the property was acquired by a spouse through inheritance or gift. The appropriate standard of review of this issue has been expressed as follows:

> The standard for reviewing the trial court's valuation of property is the same as the standard for reviewing the court's division of property. The valuation of assets is committed to the trial court's sound discretion, and as the reviewing court, we will not reweigh the evidence, but will consider it in a light most favorable to the judgment. We will only reverse the trial court if the valuation is clearly against the logic and effect of the circumstances before it.

*Hacker v. Hacker*, 659 N.E.2d 1104, 1108 (Ind. Ct. App. 1995) (internal citations omitted).

In this case, the only evidence before the trial court was Husband's expert's testimony that the value of Wife's remainder interest was $435,308.00 and Wife's contention that the interest was too remote to constitute marital property capable of being subject to division. The trial court used Husband's tendered valuation, explained its reasons for deviating from the presumptive equal division, and entered its order to the effect that Wife pay 30% of the present value of the property to Husband within 30 days of acquiring a possessory interest in the property. Even if error existed, and we do not reach that conclusion here, the error, at best, is invited error. *See Balicki v. Balicki*, 837 N.E.2d 532, 541 (Ind. Ct. App. 2005) ("the doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her neglect or misconduct").

A trial court has discretion to set any date between the date of filing the dissolution petition and the date of the final hearing as the date for marital property valuation. *Deckard*

*v. Deckard*, 841 N.E.2d 194 (Ind. Ct. App. 2006). "Even some vested interests, such as remainders in which the spouses have no present possessory interest, are deemed too remote to be included in a property award settlement." *Hacker v. Hacker*, 659 N.E.2d 1104, 1107 (Ind. Ct. App. 1995) (citing *Loeb v. Loeb*, 261 Ind. 193, 1999, 301 N.E.2d 349, 353 (1973)). In this case, the trial court chose to treat Wife's vested remainder interest in the farmland acquired during the marriage as a marital asset capable of division and reasonably relied upon Husband's tendered valuation in dividing the asset.[2] We cannot say that the trial court abused its discretion.

4.

Husband claims that the trial court abused its discretion by ordering Husband to pay a portion of Wife's attorney fees. Wife contends that Husband has waived this argument for purposes of appellate review by failing to state the appropriate standard of review or statutory or common-law authority. We agree with Wife that Husband's arguments along this vein do not comply with Ind. Appellate Rule 46(A).

Waiver notwithstanding, our review of a trial court's decision to award attorney fees in connection with a dissolution decree is for an abuse of discretion. *Thompson v. Thompson*, 811 N.E.2d 888 (Ind. Ct. App. 2004). When the trial court makes such an award, it must consider the resources of the parties, their economic conditions, the ability of the parties to

---

[2] Husband's reliance on *Moyars v. Moyars,* 717 N.E.2d 976 (Ind. Ct. App. 1999), is not helpful to the resolution of this issue because it involved the review of whether a remainder interest in property was too remote to be included in the property division. Here, the trial court included the property in the marital pot and the issue is one of valuation. The matter in *Moyars* was remanded to the trial court to consider evidence of valuation, which evidence had been previously excluded.

engage in gainful employment, to earn adequate income, and other factors pertinent to an assessment of the reasonableness of the award. *Id*. A trial court need not state its reasons for its decision to award attorney fees. *Id*. Misconduct that results in further litigation expenses, however, may be considered by the trial court when deciding whether to award attorney fees. *Id*. Additionally, I.C. § 31-15-10-1(West, Westlaw current through June 29, 2013, excluding P.L. 205-2013), provides that a trial court may periodically order a party to pay a reasonable amount for the cost to the other party of maintaining or defending a dissolution action by way of attorney fees incurred before the commencement of the proceedings or after entry of judgment.

Wife's attorney fee exhibit, which was admitted in evidence, showed that she had incurred over $34,000.00 in attorney fees related to the dissolution action. Husband was ordered to pay $3000.00 of preliminary fees for Wife's attorney fees, and an additional $3000.00 toward Wife's attorney fees in the dissolution decree. Although not required to do so, the trial court stated in its order that "[h]aving considered the evidence, the Court's contempt finding for Husband's non-payment of child support, and the financial circumstances of the parties finds that a final award of attorney fees is appropriate." *Appellant's Appendix* at 37. Based upon our review of the record, we conclude that the trial court did not abuse its discretion in ordering Husband to pay a portion of Wife's attorney fees.

5.

In a paragraph of the argument section of Husband's brief concerning the division of the marital estate and in another paragraph of the argument section addressing the trial court's award of attorney fees to Wife, Husband made the following claims:

> The trial court erred by not finding Wife in contempt for her dissipation of a marital asset. Wife failed to make mortgage payments on the marital residence after she began her new job in January 2012, as the court stated in Paragraph 56 of the Decree. As a result, the house went into foreclosure. At the time of the final hearing, the house had no equity and actually had a negative value as the parties'[sic] still owed $23,350.36 on a home equity loan. [App. p. 29, Decree 19, ¶ 63]
>
> . . . .
>
> The court also ignored Wife's own costly contempt of the Preliminary Order of July 6, 2011 that she pay and be responsible for the mortgage on the marital residence. [App. p. 95] The court noted that "Wife failed to pay any mortgage payment as ordered by the Court even after her employment in January, 2012." [App. p. 27 Decree 17, ¶ 56] Wife's failure to pay the mortgage on the marital residence contributed to the marital residence falling into foreclosure and losing any value as a marital asset.

*Appellant's Brief* at 30-31. Wife contends that Husband has waived any argument concerning the trial court's failure to find her in contempt of its order by failing to state this issue under a separate heading and to describe the issue presented. We agree with Wife that Husband's arguments along this vein do not comply with Ind. Appellate Rule 46(A). There is no citation of the appropriate standard of review or citation to authority.

Waiver notwithstanding, whether a party is in contempt of a court order is a matter left to the sound discretion of the trial court. *Richardson v. Hansrote*, 883 N.E.2d 1165 (Ind. Ct. App. 2008). We will reverse the trial court's determination only where we find the trial court

20

abused that discretion. *Id*. An abuse of discretion occurs when the trial court's determination is against the logic and effect of the facts and circumstances presented. *Id*. Additionally, indirect contempt has been defined as the willful disobedience of any lawfully entered court order of which the offender had notice. *Id*.

In the present case, the record reflects that Husband failed to pay much, if any, child support following the entry of the provisional order until the time of trial. Wife testified that she was unemployed and that impacted her ability to make the mortgage payment. The trial court acknowledged that Wife continued to fail to pay the mortgage after she became employed, but also acknowledged that she had been unemployed for some time. When Wife received some child support, she applied a majority of it toward reduction of the mortgage delinquency. Consistent with our standard of review, which prohibits this court from reweighing the evidence, we cannot say that the trial court abused its discretion by failing to find Wife in contempt.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.